NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EXPRESS MOBILE, INC.,**
*Plaintiff-Appellant*

**v.**

**GODADDY.COM, LLC,**
*Defendant-Appellee*

---

2023-2265

---

Appeal from the United States District Court for the District of Delaware in No. 1:19-cv-01937-MFK-JLH, Judge Matthew F. Kennelly.

---

Decided: April 2, 2025

---

JAMES RICHARD NUTTALL, Steptoe LLP, Chicago, IL, argued for plaintiff-appellant. Also represented by ROBERT KAPPERS, CANDICE JAESUN KWARK.

BRIAN W. LACORTE, Ballard Spahr LLP, Phoenix, AZ, argued for defendant-appellee. Also represented by ANDREW HENSLEY, MITCHELL LEE TURBENSON; BETH MOSKOW-SCHNOLL, Wilmington, DE.

---

Before LOURIE, TARANTO, and STOLL, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Express Mobile, Inc. owns five patents at issue here. The first two are U.S. Patent No. 6,546,397 and its descendant No. 7,594,168 (the ’397 patent family), which describe and claim systems and methods for building websites. The other three are U.S. Patent No. 9,063,755 and its descendants Nos. 9,471,287 and 9,928,044 (the ’755 patent family), which describe and claim systems and methods for displaying website information, integrating widgets, and programming, especially on mobile devices.

In 2019, Express sued GoDaddy.com, LLC in district court, alleging infringement of those patents. The district court construed a claim phrase “runtime engine” in the ’397 family to require that it perform the function of “read[ing] information from the database” (to obtain material for building a website). Based on that construction, the district court granted GoDaddy summary judgment of noninfringement. Asserted claims of the ’755 family went to trial, and the jury found noninfringement. The district court denied Express’s requests for judgment as a matter of law (JMOL) or a new trial.

On Express’s appeal, we reverse the district court’s construction of the claim phrase “runtime engine” and vacate the summary judgment of noninfringement of the ’397 family’s claims. We affirm the district court’s denial of post-judgment relief from the jury’s verdict of noninfringement for the ’755 family. We remand the case for further proceedings regarding the ’397 family.

# I

## A

The two patents in the ’397 family, which share a specification (so we cite only the ’397 specification), disclose website development tools and methods, including a

"runtime engine" that generates websites by using information, such as objects and styles, from a database. '397 patent, col. 1, lines 11–49; *id.*, col. 2, lines 31–41; *id.*, col. 5, lines 48–62; *id.*, col. 65, lines 58–63. For present purposes, the two patents' first claims are representative.

Claim 1 of the '397 patent recites:

> 1. A method to allow users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays, said method comprising:
>
> (a) presenting a viewable menu having a user selectable panel of settings describing elements on a website, said panel of settings being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponds to commands to said virtual machine;
>
> (b) generating a display in accordance with one or more user selected settings substantially contemporaneously with the selection thereof;
>
> (c) storing information representative of said one or more user selected settings in a database;
>
> (d) generating a website at least in part by retrieving said information representative of said one or more user selected settings stored in said database; and
>
> (e) building one or more web pages to generate said website from at least a portion of said database and at least one run time file, ***where said at least one run time file utilizes information stored in said database*** to generate virtual machine commands for the display of at least a portion of said one or more web pages.

*Id.*, col. 65, line 44, through col. 66, line 2 (emphasis added).

Claim 1 of the ’168 patent recites:

> 1. A system for assembling a web site comprising:
>
> a server comprising a build engine configured to:
>
> accept user input to create a web site, the web site comprising a plurality of web pages, each web page comprising a plurality of objects,
>
> accept user input to associate a style with objects of the plurality of web pages, wherein each web page comprises at least one button object or at least one image object, and wherein the at least one button object or at least one image object is associated with a style that includes values defining transformations and time lines for the at least one button object or at least one image object; and wherein each web page is defined entirely by each of the plurality of objects comprising that web page and the style associated with the object,
>
> produce a database with a multidimensional array comprising the objects that comprise the web site including data defining, for each object, the object style, an object number, and an indication of the web page that each object is part of, and
>
> provide the database to a server accessible to web browser;
>
> wherein the database is produced such that a web browser with access to ***a runtime engine is configured to generate the web-site from the objects and style data extracted from the provided database***.

’168 patent, col. 64, line 48, through col. 65, line 6 (emphasis added).

The three patents in the ’755 family, which share a specification (so we cite only the ’755 specification), disclose systems and methods for displaying website information and incorporating widgets in a display, and making programming modifications, especially for mobile devices. ’755 patent, Abstract; *id.*, col. 1, lines 7–9, 34–67. The patents disclose techniques that allow for the display of website information on different devices by generating both device-independent code (an Application) and device-dependent code (a Player). *Id.*, col. 1, line 51, through col. 2, line 3; *id.*, col. 37, lines 5–6, 15–35.

Claim 1 of the ’755 patent, which is representative for present purposes, recites:

> 1. A system for generating code to provide content on a display of a device, said system comprising:
>
> ***computer memory storing a registry of***:
>
> a) ***symbolic names required for evoking one or more web components*** each related to a set of inputs and outputs of a web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, and
>
> b) the address of the web service;
>
> an authoring tool configured to:
>
> define a user interface (UI) object for presentation on the display, where said UI object corresponds to the web component included in said registry selected from the group consisting of an input of the web service and an output of the web service,
>
> access said computer memory to select the symbolic name corresponding to the web component of the defined UI object,

> associate the selected symbolic name with the defined UI object,
>
> produce an Application including the selected symbolic name of the defined UI object, where said Application is a device-independent code, and
>
> produce a Player, ***where said Player is a device-dependent code***;
>
> such that, when the Application and Player are provided to the device and executed on the device, and when a user of the device provides one or more input values associated with an input symbolic name to an input of defined UI object,
>
> 1) the device provides the user provided one or more input values and corresponding input symbolic name to the web service,
>
> 2) the web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name,
>
> 3) said Player receives the output symbolic name and corresponding one or more output values and provides instructions for a display of the device to present an output value in the defined UI object.

*Id.*, col. 37, lines 5–46 (emphases added).

B

On October 11, 2019, Express sued GoDaddy alleging infringement of the five patents. By August 2022, the claims at issue were claims 1, 2, 3, 11, and 37 of the ’397 patent; claims 1, 2, and 3 of the ’168 patent; claims 1, 3, 12, 16, and 22 of the ’755 patent; claims 1 and 13 of the ’287 patent; and claims 1, 11, 13, 17, and 19 of the ’044 patent. *See* Memorandum Opinion and Order at 1 n.1, *Express Mobile, Inc. v. GoDaddy.com, LLC*, No. 1:19-cv-

01937-MFK, (D. Del. Aug. 8, 2022) ECF No. 261 (J.A. 29 n.1) (*Summary Judgment Opinion*).

In June 2021, the district court construed multiple claim terms, *Express Mobile, Inc. v. GoDaddy.com, LLC*, No. 1:19-cv-01937-RGA, 2021 WL 2209868, at *5–13 (June 1, 2021) (*Claim Construction Opinion*) (J.A. 10–25), and in August 2022, the district court construed two more claim terms, *Summary Judgment Opinion*, at 4–14 (J.A. 32–42). Relevant to the ’397 family, the district court construed a "runtime engine" as a "file that is executed at runtime that ***reads information from the database*** and generates commands to display a web page or website." *Claim Construction Opinion*, at *8–9 (J.A. 16–17) (emphasis added). It also construed "at least one run time file / one or more run time files" to include a runtime engine, *i.e.*, as "one or more files, including a run time engine, that are downloaded or created when a browser is pointed to a web page or website." *Id.* at *6 (J.A. 11). Relevant to the ’755 family, the court construed "device-dependent code" as "code that is specific to the operating system, programming language, or platform of a device," *id.* at *5 (J.A. 10), "Player" as "device-specific code which contains instructions of a device and which is separate from the Application," *Summary Judgment Opinion*, at 9–14 (J.A. 37–42), and "registry" as "a database that is used for computing functionality," *Claim Construction Opinion*, at *9–10 (J.A. 17–19). The court provided no construction of "symbolic name(s)." *Id.* at *11–12 (J.A. 22–23).

In its August 8, 2022 *Summary Judgment Opinion*, the district court, among other rulings, granted GoDaddy summary judgment of noninfringement of the asserted claims of the ’397 family. *Summary Judgment Opinion*, at 22–27 (J.A. 50–55). Express pointed to certain JavaScript files in GoDaddy's accused products as meeting the

"runtime engine" claim limitation.[1] *Id.* GoDaddy, relying on the court's claim constructions, contended that those JavaScript files did not "read information from the database" and therefore could not be runtime engines. *Id.* at 25 (J.A. 53). The district court agreed with GoDaddy. *Id.* at 25–27 (J.A. 53–55).

From February 27, 2023, to March 3, 2023, the district court held a jury trial on infringement of the asserted claims of the '755 family. In its verdict, the jury found that GoDaddy did not infringe any of the asserted claims. After the jury verdict, Express renewed its unsuccessful pre-verdict motion for JMOL and in the alternative sought a new trial, but the district court denied the motion. *See generally Express Mobile, Inc. v. GoDaddy.com, LLC*, 680 F. Supp. 3d 517 (D. Del. July 5, 2023) (*Post-Trial Opinion*) (J.A. 120–38).

Express timely appealed on August 3, 2023. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

Claim construction is a question of law that we decide de novo, with any underlying factual findings made by the district court reviewed for clear error. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324–28 (2015). When construing a claim, we look to the claim language, specification, and prosecution history, as well

---

[1] Express accused several other GoDaddy files of meeting the "runtime engine" claim limitation, but the district court found those files non-infringing. *Id.* at 23–25 (J.A. 51–53). On appeal, Express discusses only the JavaScript files. We leave it to the district court to determine whether the findings about other files in the GoDaddy accused products should be reconsidered in light of the change in claim construction we now require.

as any relevant extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

We follow the general standards for summary judgment, JMOL, and new trials stated by the regional circuit containing the district court (here, the Third Circuit). *See Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019) (citations omitted); *Teva Pharmaceutical Industries Ltd. v. AstraZeneca Pharmaceuticals LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011) (citation omitted); *Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1326 (Fed. Cir. 2016) (citation omitted). As relevant here, we review a JMOL denial de novo, and the JMOL standard is whether "there is insufficient evidence from which a jury reasonably could find for the nonmovant," accounting for who has the burden of persuasion. *Amgen*, 944 F.3d at 1333 (citations omitted). We review the denial of a new trial motion for "abuse of discretion," *Power Integrations*, 843 F.3d at 1326 (citation omitted), and "[t]he decision to grant or deny a new trial is committed to the discretion of the district court, which grants a new trial only where 'a miscarriage of justice would result if the verdict were to stand' or where the verdict 'shocks [the] conscience.'" *Amgen*, 944 F.3d at 1333 (alteration in original) (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352–53 (3d Cir. 1991)).

## A

Express contends that, for the '397 family, the district court erred in its construction of "runtime engine." *See generally* Express Opening Br. at 18–27. The district court construed "runtime engine" to mean a "file that is executed at runtime ***that reads information from the database*** and generates commands to display a web page or website." *Claim Construction Opinion*, at *8–9 (J.A. 16–17) (emphasis added). Express argues here, as it did in the district court, that "runtime engine" should be

given a broader construction, *i.e.*, to mean a "file that is executed at runtime ***that utilizes information from the database*** and generates commands to display a web page or website." *Id.* (emphasis added); *see* Express Opening Br. at 18–27. The district court, in granting summary judgment of noninfringement, relied entirely on its adopted construction, not, in the alternative, on Express's proposed construction. We agree with Express's proposed claim construction and therefore reverse the district court's claim construction, vacate the summary judgment of noninfringement, and remand for further proceedings.

1

We look first to the language of the specific phrase at issue and its surrounding language in the claim. *Phillips*, 415 F.3d at 1314; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is undisputed that the phrase "runtime engine" itself does not explain what a runtime engine must do, other than perform some function at runtime (*i.e.*, when a computer file is executed). The surrounding claim language, however, does indicate some specific functions of a runtime engine.

The claims expressly recite "at least one run time file" (which, according to the court's construction of "run time files," includes "a run time engine," *see Claim Construction Opinion*, at *6 (J.A. 11)) that "***utilizes information stored in said database***," '397 patent, claim 1 (emphasis added), as well as a "runtime engine" that is "configured to ***generate the web-site from*** the objects and style ***data extracted from the provided database***," '168 patent, claim 1 (emphasis added). The highlighted language is broader than the district court's construction (as the district court and GoDaddy understood that construction). The language requires no more than that the runtime engine "utilize[]" information from the database or use data that has been "extracted from" the database, without saying how the data came into the runtime engine's

possession or what entity does the extracting. It does not further limit the runtime engine to interacting with a database in a specific way to obtain data. In particular, it is distinctly broader than a construction requiring that the runtime engine itself read from the database.

2

Contrary to GoDaddy's argument, *see* GoDaddy Response Br. at 20–22, the specification does not support narrowing the claim construction to incorporate the district court's reading requirement. The specification does describe embodiments in which a runtime engine (or runtime file) receives information from a database in a particular way: reading. *See*, *e.g.*, '397 patent, col. 5, lines 59–62 ("The run time engine then begins to read the database . . . ."); *id.*, col. 45, lines 44–57 ("FIG. 29 shows the techniques employed by the run time engine to read the external database . . . ."); *id.*, fig. 29 (displaying a step in which a "runtime engine reads a param value which points to the database and initiates the read operation") (capitalization normalized). But the claim language on its face is broader, as discussed above, and the specification's descriptions of reading do go beyond describing examples of how the runtime engine can acquire the data.

"[W]hile claims are to be construed in light of the specification, they are not necessarily limited by the specification." *Enercon GmbH v. International Trade Commission*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (citation omitted). Features of particular embodiments are generally not read into the claims where the claim language is on its face broader. *See Phillips*, 415 F.3d at 1323; *see*, *e.g.*, *IQRIS Technologies LLC v. Point Blank Enterprises, Inc.*, 130 F.4th 998, 1003–04 (Fed. Cir. 2025); *see also Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (explaining that, to limit the scope of a claim term to a distinct subset of what its language otherwise covers, the intrinsic evidence must do

so clearly). Here, GoDaddy has identified nothing in the specification that would override the breadth of the claim language to require reading of the database by the runtime engine.

3

The prosecution history also does not overcome the claim language's breadth to support the district court's limiting a runtime engine's method of obtaining information from a database to reading the database. In the passage from the prosecution history (of the '397 patent) relied on by GoDaddy, Express described a runtime engine as "reading and interpreting the external database and then building the web pages dynamically." J.A. 616; J.A. 625–26 (explaining that at runtime, the "runtime engine of the claimed invention is downloaded over a network and, when initialized, downloads the . . . database," and that the claimed invention displays content by "reading each of the . . . attributes from the database and combining them individually with the draw command to form a virtual machine command"); *see* GoDaddy Response Br. at 21–22 (citing prosecution history). Understood in its context, Express's statements are not fairly understood as disclaiming or disavowing the runtime engine's receipt of information from the database other than by itself reading the database.

When Express described its claimed runtime engine as "reading," it was not making a point about how the runtime engine obtains database information. Rather, it was distinguishing a prior-art reference, Faustini, as non-anticipatory because Faustini, unlike Express's own invention, did not teach "production of web pages," J.A. 616, or the use of an "external database," *i.e.*, a "database of user settings," at all, J.A. 616, 624, *see also* J.A. 625–26 (highlighting the claimed invention's ability to generate "many totally different web pages . . . with the same runtime engine" and its "potential to greatly decrease the

size of files required to display some types of web pages" as improvements over the prior art). Consistent with that explanation, moreover, Express amended its claims to recite "at least one run time file . . . operating ***to utilize*** information" stored in a database, *see* J.A. 629–31 (emphasis added), adopting a phrase plainly not restricted to the runtime engine's reading the database.

4

GoDaddy next points out that several tribunals, *i.e.*, "the District of Delaware on two separate occasions, the Northern District of California, and the [Patent Trial and Appeal Board]," have considered Express's '397 family and construed a "runtime engine" as "reading" from a database. GoDaddy Response Br. at 18–20. But those constructions do not bind us. And GoDaddy has not identified anything in the claim-construction analyses set forth by the cited tribunals that undermines the above claim-construction analysis.

Nor has GoDaddy persuasively supported its brief contention, *id.* at 19, that Express "should be estopped" from pressing its current position because, in an inter partes review involving the '168 patent, it did not argue against the Board's use of the district courts' constructions that required the runtime engine to "read[]" data from the database or to "facilitate[] the retrieval of information from the database." *See Facebook, Inc. v. Express Mobile, Inc.*, IPR2021-01226, 2023 WL 157632, at *4–5 (P.T.A.B. Jan. 11, 2023) (*IPR2021-01226 Decision*). In particular, GoDaddy has not shown that Express gained any advantage from its choice not to press its used-by construction in the Board proceeding. The present dispute between constructions did not arise in the inter partes review, because the challenger (Facebook), making its own choices, did not argue for the used-by construction. Petition for *Inter Partes* Review of U.S. Patent 7,594,168 B2, at 15–18, *Facebook, Inc. v. Express Mobile,*

*Inc.*, IPR2021-01226 (July 6, 2021). The Board noted that, although there were some interpretive differences actually raised (not the present difference), those interpretive disputes made no difference to the Board's ruling, *see IPR2021-01226 Decision*, at *4–5—which went *against* Express, all the challenged claims being held unpatentable, *id.* at *21. And although Express has appealed that ruling, no issue is presented in that appeal about the construction of "runtime engine." *See generally* Opening Brief for Appellant Express Mobile, Inc., *Express Mobile, Inc. v. Facebook, Inc.*, Fed. Cir. No. 23-1646, ECF No. 46 (Oct. 27, 2023); Brief for Appellees, *id.*, ECF No. 50 (Feb. 5, 2024). In these circumstances, we do not find Express to be estopped from presenting its claim-construction position here.

* * *

Because we reverse the district court's claim construction of the term "runtime engine," we vacate the grant of summary judgment of noninfringement of the asserted claims of the '397 family, which is based on an erroneous claim construction. We remand the case for additional proceedings on infringement of the asserted claims when properly construed. In the respect disputed here, the claims of both patents simply require the runtime engine to use the information from the database.

B

In regard to the '755 family, Express argues that the district court erred in denying its request for JMOL or, in the alternative, a new trial. Express Opening Br. at 40–59. We understand Express, in this court, to make three main arguments. One relates to claim construction. The other two arguments challenge the jury verdict—a claim-by-claim general noninfringement verdict, without limitation-by-limitation findings, J.A. 113—as insufficiently supported by the evidence. The insufficiency arguments focus on two groups of limitations, though Express would

have to prevail on both—as well as what may be other bases for a jury finding of noninfringement—in order for it to prevail on its insufficient-evidence challenge to the verdict. *Abbott Laboratories v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1349 (Fed. Cir. 2003). We reject Express's challenges regarding the '755 family.

1

Express asserts that, at trial, GoDaddy "contradicted the district court's constructions" of several claim terms—specifically, that GoDaddy pressed improper understandings of "platform" and "database," words that appear in the district court's claim constructions of "device-dependent code" and "registry," respectively. Express Opening Br. at 40. This contention is, in essence, a complaint about a need for further claim construction, about improper party argument, or about improper testimony. But those are precisely the kinds of complaints that must be made before a trial ends. *See*, *e.g.*, *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1320–21 (Fed. Cir. 2003) (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345–46 (Fed. Cir. 2001)) ("[T]he parties cannot reserve issues of claim construction for the stage of post-trial motions.")); *ATEN International Co. v. Uniclass Technology Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019) (quoting *CytoLogix Corp. v. Ventana Medical Systems, Inc.*, 424 F.3d 1168, 1173 (Fed. Cir. 2005) ("[T]here is no ground for reversal since there was no objection to the expert testimony as to claim construction.")). Yet Express makes no assertions (and the record before us does not indicate) that it sought additional claim construction or that it objected to GoDaddy's arguments or witness testimony during trial. Express Opening Br. at 40–59. Express has not shown an abuse of discretion in the district court's denial of a new trial. *See Post-Trial Opinion*, at 525–28 (J.A. 127–32).

2

Express argues that the evidence compelled a finding that the GoDaddy code Express relied on to meet the "Player" limitation actually does so. Express Opening Br. 40–55. We disagree.

The district court construed "Player" to mean "device-specific code which contains instructions of a device and which is separate from the Application." *Summary Judgment Opinion*, at 9–14 (J.A. 37–42). The court treated "device-specific code" and "device-dependent code" as synonymous, *see id.* at 27 (J.A. 55), and neither party challenges that conclusion, *see*, *e.g.*, Express Opening Br. at 40 (asserting that a Player is a device-dependent code), GoDaddy Response Br. at 39 (arguing that there is no device-dependent Player in the accused products). And the district court construed "device-dependent code" to mean "code that is specific to the operating system, programming language, or platform of a device." *Claim Construction Opinion*, at *5 (J.A. 10).

In the accused products, Express identified, as meeting the Player limitation, certain portions of GoDaddy code that detect which ***browser*** type is being used and then use that information to format a web page displayed on the browser. *See*, *e.g.*, J.A. 17594, 54:18–55:11 (GoDaddy's witness explaining GoDaddy's process for ensuring its software works across different resolutions and web browsers); J.A. 17458, page 642, lines 3–5 (GoDaddy's expert explaining that its code "allows the program to adjust slightly depending on what browser it's displayed in"); J.A. 17468, page 683, line 25, through page 684, line 18 (GoDaddy's expert agreeing that the identified code determines the type of browser used and may use the browser type to change the website display). Express contends that a browser is a "platform" in the above-quoted claim construction, so the accused code had to be

found to meet the "Player" limitation. Express Opening Br. at 40–41.

The jury could reasonably find against that analysis. GoDaddy's expert and a named inventor of the '755 patent both testified that a Player is not a browser. *See*, *e.g.*, J.A. 17472, page 698, line 15, through page 699, line 23 (GoDaddy's expert testimony); J.A. 17345, page 194, lines 15–17 (named inventor's testimony). GoDaddy's expert also explained that GoDaddy's accused files, which are JavaScript files, are not device-specific, can run across different browsers and devices, and therefore do not meet the "Player" limitation. *See* J.A. 17457, page 637, line 4, through page 639, line 18; J.A. 17458, page 641, line 16, through page 642, line 8. And to the extent that Express insists that the term "platform" in the claim construction *must* cover a browser, it is arguing about an issue that, in the absence of a further claim construction (not requested at all or in a timely manner), is a factual one for the jury, *see*, *e.g.*, *VLSI Technology LLC v. Intel Corp.*, 87 F.4th 1332, 1341 (Fed. Cir. 2023), and Express has not shown that rejection of its position on that issue would be unreasonable. We therefore see no reversible error in the denial of JMOL of infringement.

3

Express argues that the evidence compelled a finding that GoDaddy's accused products met the "registry" or "symbolic names" limitations of the '755 family patents. Express Opening Br. at 55–57. We disagree.

The district court construed "registry" to mean "a database that is used for computing functionality," *Claim Construction Opinion*, at *9–10 (J.A. 17–19), a construction the parties do not contest. The court provided no construction of "symbolic names," *id.* at *11–12 (J.A. 22–23), but the claim language expressly states that symbolic names are stored in a registry and are required for evoking one or more web components, '755 patent, col. 37,

lines 5–9. The parties agree that "the existence of a 'registry' is required for the 'symbolic name' claim element to be infringed, and vice versa." Express Opening Br. at 57 (citing J.A. 21739 (GoDaddy's opposition to JMOL)). Express asserts that there was insufficient evidence for the jury to find the accused products not to meet these limitations. *Id.* at 56–57. But the district court concluded, and we agree, that "[t]he trial record demonstrates that the jury received sufficient evidence from which it could reasonably find that GoDaddy's products do not infringe." *Post-Trial Opinion*, at 528 (J.A. 132).

There was substantial evidence to support a finding that GoDaddy's products did not meet the "registry" limitation. For instance, GoDaddy's expert explained that what Express identified in the accused products as the registry was an unstructured file that could not be a database or, therefore, a registry, J.A. 17460, page 650, line 23, through page 651, line 4, and Express's expert admitted that he did not check what was in the accused registry, J.A. 17380, page 332, lines 12, through page 333, line 10. Likewise, there was substantial evidence for the jury to find that the accused products did not practice the "symbolic names" limitation. In particular, GoDaddy's witnesses testified that the accused "symbolic names" were not stored in any database, J.A. 17436, page 553, line 24, through page 554, line 6, and did not evoke web components, *see*, *e.g.*, J.A. 17347, page 558, lines 1–8 (GoDaddy's employee rebutting the assertion that "divs," a type of HTML element, constitute symbolic names since they are not stored); J.A. 17443, page 581, lines 9–13 (explaining that the accused symbolic name "YouTube" does not, on its own, evoke web components).

* * *

Because substantial evidence supports the jury's verdict on noninfringement, and Express has identified no

basis for a new trial, we affirm the district court's denial of the requests for post-trial relief.

## III

For the foregoing reasons, for the '397 family, we reverse the district court's construction of "runtime engine," vacate the court's summary judgment of noninfringement, and remand the case for further proceedings regarding the two patents in that family. For the '755 family, we affirm the court's denials of Express's motion for JMOL and, in the alternative, a new trial.

The parties shall bear their own costs.

**REVERSED IN PART, VACATED IN PART, AFFIRMED IN PART, AND REMANDED**